UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WENDELL BEDFORD,

    Plaintiff,　　　　　　　　　　　　　　　　No. 1:01-cv-861

    vs.　　　　　　　　　　　　　　　　　　　Beckwith, J; Perelman, M.J.

CINERGY CORPORATION
dba CINCINNATI GAS
& ELECTRIC COMPANY

    Defendant.

**REPORT AND RECOMMENDATION[1] THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 36) BE GRANTED AND THIS CASE BE CLOSED**

This is a pro se action brought by plaintiff Wendell Bedford against his former employer, defendant Cinergy Corporation dba Cincinnati Gas & Electric Company, for alleged employment discrimination resulting in his discharge. (*See* doc. 5). In the complaint plaintiff asserts that defendant discriminated against him based on race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and Ohio Rev. Code Ann. § 4112.02. Specifically, he alleges that on or about August 7, 2000, defendant unlawfully terminated his employment for alleged urine test irregularity when similarly situated white employees were subject to less than termination for equal or more

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

grave urine test irregularities. (Doc. 5).

On December 30, 2002, defendant filed a motion for summary judgment. (*See* doc. 36). Plaintiff filed a memorandum in opposition to the summary judgment motion (doc. 47) and defendant replied (doc. 49). Based on the discussion below, the Court recommends that defendant's motion for summary judgment be granted.

Plaintiff alleges that he began his employment with defendant on February 12, 1990 and maintained an exemplary record for ten years. (Doc. 47). During the course of his employment he sustained an injury which is the subject of an ongoing worker's compensation claim and alleges that in retaliation for having made that claim defendant "seized an opportunity to rid itself of Plaintiff." (*Id.*)

On July 26, 2000 plaintiff was required to submit to a random urine sample. (*Id.*) Because the sample cooled below a minimum acceptable temperature, he was required to submit another sample. (*Id.*) The first sample tested negative for banned substances, but the second tested positive. (*Id.*) In light of the inconsistent test results, defendant concluded that the first sample was adulterated to mask the presence of banned substances.

On the ground that plaintiff submitted an adulterated sample in violation of defendant's drug policy, his employment was terminated. (*See* doc. 36, att. A, ex. 29).

In support of his discrimination claims, plaintiff has identified two allegedly "similarly situated" employees.

As regards the first, a white female, plaintiff asserts that she submitted a sample

that fell below a minimally acceptable quantity, and when asked to submit a new sample, allegedly refused, fleeing the testing facility, and that her failure to submit to re-testing did not result in termination. (*Id.*)

He contends that the second, a white male, allegedly tested positive for banned substances on more than one occasion but was not discharged. (*Id.*)[2]

Plaintiff maintains that in light of his exemplary record and applicable company policy he should have received a suspension for a first time violation and, consistent with the treatment afforded the white employees, should not have been discharged. (*Id.*)

Defendant denies that it engaged in any form of employment discrimination against plaintiff, and maintains that it is entitled to summary judgment on plaintiff's federal and state causes of action.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be

---

[2] While plaintiff argues that on June 6, 2003, the Court ruled that the two white employees were similarly situated, it must be noted that the Court found only that the three employees were "sufficiently similarly situated *for purposes of discovery*." (Doc. 41 at 2) (emphasis added).

construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a properly supported motion, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). Conclusory allegations are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990).

The Court's function is not to weigh the evidence and determine the truth of the matters asserted, but to determine if there is a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 249. The inquiry is whether the evidence presents a sufficient disagreement over the facts to require submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52.

The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary

judgment," *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson,* 477 U.S. at 250; *Guarino,* 980 F.2d at 404-05.

Because federal case law interpreting Title VII is equally applicable to cases arising under Ohio Rev. Code Ann. § 4112.02 plaintiff's federal and state law claims may be considered together. *See Carter v. University of Toledo,* 349 F.3d 269, 272 (6th Cir. 2003); *Ohio Civil Rights Comm'n v. David Richard Ingram, D.C., Inc.,* 69 Ohio St. 3d 89, 95, 630 N.E.2d 669, 674 (1994). To establish a Title VII employment discrimination claim, plaintiff is required either to "present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Carter,* 349 F.3d at 272-73 (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)).

Plaintiff has not presented any direct evidence of discrimination. Thus, he must satisfy, through circumstantial evidence, the burden-shifting approach first set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973). *See Johnson,* 319 F.3d at 865-66.

Plaintiff has the initial burden to establish a prima facie claim by showing that (1) he is part of a protected class; (2) he was qualified for the job that he held during the time in question; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly-situated individuals who were not members of his protected class. *See McDonnell Douglas,* 411 U.S. at 800-04; *Thurman v. Yellow Freight Sys., Inc.*,

90 F.3d 1160, 1166 (6th Cir. 1996).

If plaintiff establishes a prima facie case, defendant may rebut plaintiff's claim by introducing evidence of a legitimate nondiscriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 803; *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). If defendant presents such evidence and if it is accepted as true, then the Court can conclude that a nondiscriminatory reason existed. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). Once defendant makes this showing, then the burden shifts back to plaintiff to demonstrate that defendant's stated reason is merely a pretext for discrimination. *See Burdine,* 450 U.S. at 256.

To demonstrate pretext, plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate his discharge, or (3) that it was insufficient to motivate his discharge. *See Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994).

It is undisputed that plaintiff as an African-American, is part of a protected class; that he was qualified for his position; and that he suffered an adverse employment action when his employment was terminated. This Court concludes, however, that he has not presented sufficient evidence to create a genuine issue of material fact with respect to the fourth prong, that he was treated differently than other similarly situated employees.

To meet the fourth prong plaintiff must show that the employees who are alleged to be similarly situated are similarly situated in all relevant respects. *See Perry v.*

*McGinnis,* 209 F.3d 597, 601 (6th Cir. 2000); *see also Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992). To be so considered they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583.

In arguing that he and the other two employees were similarly situated plaintiff maintains that they all were "apparently engaged in drug-related activities which violated Defendant's Drug Involvement Policy and for which each could have been terminated." (*See* doc. 41).

To counter that position defendant has presented evidence that the other two employees' cases not only involved different misconduct and different violations of the drug policy but also that differing and mitigating circumstances existed.

The uncontradicted evidence presented by defendant shows that the test results of the samples submitted by plaintiff were inconsistent, leading defendant to suspect that plaintiff had tampered with the drug testing process. (*See* doc. 36, att. E, exs. C-E, H). This being so, plaintiff's employment was terminated on the ground that he submitted an adulterated sample – not on the ground that he submitted a positive sample. (*See id.*, att. A, ex. 29).

Uncontroverted evidence in the record shows that the violation by the white female employee who left the testing facility did not involve an adulterated sample, and was not of the generalized nature as presented by plaintiff. Rather, the evidence shows that after

-7-

her failure to produce a sufficient sample she was told to drink some liquid and to make another attempt. (*See* doc. 49, att. B, ex. C, p. 12). She then left the testing site briefly to wait in her truck, without being informed that she could not leave or that she would not be permitted to complete the test if she did leave. (*Id.*) Under defendant's drug policy, she was disciplined for a refusal to submit to testing. (*See* doc. 49, att. B, ¶¶ 6-9).

Similarly, defendant's evidence is that the second violation[3] by the white male employee identified by plaintiff did not involve an adulterated sample. After that employee's sample tested positive for codeine, he admitted that he had taken prescription pain medicine containing codeine, which he had illegally obtained from a co-worker. (*See id.*, att. B, ¶ 17). The employee was disciplined, but not discharged, based on the positive test. (*See id.,* att. B, ¶ 18).

The record also contains evidence that a white male employee who submitted an allegedly adulterated sample, which would place him in the similarly situated category, did not receive more favorable treatment and, like plaintiff, was discharged. (*See* doc. 36, att. B, ¶ 15). Another white male employee who was initially terminated for submitting an adulterated drug test sample was reinstated following a grievance procedure in which it was determined that the policy in effect at that time, April 1998, did not clearly state that employees would be subject to immediate termination if they attempted to obstruct

---

[3] Neither plaintiff nor defendant has provided any information as to the factual background relevant to that employee's first violation. The absence of evidence that it did involve an adulterated sample negates similarly situated.

the testing process. (*Id.* at ¶¶ 11-12).

In light of the foregoing this Court concludes that plaintiff has not come forward with sufficient evidence to establish that he was treated differently than similarly-situated employees, which would entitle defendant to summary judgment by reason of plaintiff's failure to establish a prima facie showing of discrimination based on race.

To the extent that plaintiff claims that his employment was terminated in retaliation for filing a worker's compensation claim, that claim lacks merit.

As a preliminary matter, plaintiff failed to check off the box on his EEOC charge labeled as "retaliation." (*See* doc. 49, att. A, ex. 28). While this failure does not automatically merit the dismissal of a retaliation claim, *see Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546-47 (6th Cir. 1991), the Court notes that plaintiff did not set forth any facts in his discrimination charge such that the EEOC would have reasonably been placed on notice that it had a duty to investigate an allegation of retaliation. Thus, the EEOC investigation reasonably expected to grow out of plaintiff's charge would not have included a retaliation claim. "[T]he general rule in this circuit ... is that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002).

Moreover, plaintiff failed to plead a retaliation claim in his complaint. (*See* doc. 5). Because no facts are presented in the complaint to support such a claim it is subject to dismissal under Rule 8(a) of the Federal Rules of Civil Procedure. *See Scheid v. Fanny*

*Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988) (requiring a complaint to contain "more than bare assertions of legal conclusions"). *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (a Title VII plaintiff is required to give "fair notice" of employment discrimination claims).

Beyond these two deficiencies, defendant is also entitled to summary judgment on the merits of plaintiff's retaliation claim. In order to establish a prima facie case he must show that he engaged in protected activity that was known to defendant, and that an adverse action resulted which was causally connected to his protected activity. *See Williams v. Nashville Network,* 132 F.3d 1123, 1131 (6th Cir. 1997). While there is no dispute that plaintiff engaged in protected activity and suffered an adverse action, he failed to present any evidence of a causal connection. Thus, it could not be found that retaliation occurred in this case.

Accordingly, summary judgment should be granted in favor of defendant with respect to plaintiff's claims of racial discrimination and retaliation brought under Title VII and Ohio Rev. Code Ann. § 4112.02.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendant's motion for summary judgment (Doc. 36) be **GRANTED** and judgment be entered in favor of defendant.

2. As no further matters remain pending for this Court's review, the case should be **CLOSED.**

           s/David S. Perelman
           David S. Perelman
           United States Magistrate Judge

J:\Shinne\dsp\01-861 bedford msj rr.wpd

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WENDELL BEDFORD,

    Plaintiff,                                            No. 1:01-cv-861

    vs.                                                  Beckwith, J; Perelman, M.J.

CINERGY CORPORATION
dba CINCINNATI GAS
& ELECTRIC COMPANY

    Defendant.

**NOTICE REGARDING THE FILING OF OBJECTIONS TO THIS R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **FIFTEEN DAYS** after the date this Report and Recommendation is stamped "filed" by the Clerk of Court. This period may be extended by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).