INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 01-0861

No. 04-4046

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
JUL 2 6 2005
LEONARD GREEN, Clerk

WENDELL BEDFORD, )
)
Plaintiff-Appellant, )
)
v. )  O R D E R
)
) C-1-01-861
CINERGY CORP, doing business as The )
Cincinnati Gas & Electric Company, )
)
Defendant-Appellee. )
)

Before: BOGGS, Chief Judge; BATCHELDER and GIBBONS, Circuit Judges.

Wendell Bedford, an Ohio resident proceeding pro se and in forma pauperis, appeals the district court's judgment granting defendant's motion for summary judgment in this employment discrimination action. See 42 U.S.C. § 2000e-2(a); Fed. R. Civ. P. 56. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R. App. P. 34(a).

The facts are as follows: Bedford was employed by the Cincinnati Gas & Electric Company (Cinergy), before he was terminated on August 7, 2000. On July 26, 2000, plaintiff was randomly selected to take a drug test by submitting a urine sample. He submitted a sample to a testing facility staff member, who took the temperature of the sample, within four minutes of the sample's collection, as required by federal regulations. See 49 C.F.R. § 40.25 (2000). Two separate procedures both indicated that the temperature of the sample was 89.4 degrees Fahrenheit, which is outside the acceptable temperature range of 90-100 degrees Fahrenheit. Id. Bedford then agreed to have his body temperature taken with the same electronic digital thermometer that had been used to

test the sample's temperature. Bedford's body temperature was determined to be 98.1 degrees Fahrenheit.

Bedford was asked to submit to a second urine test, within two hours of the first, and Bedford agreed to do so. Bedford gave the second specimen under the direct observation of a male employee of the testing facility, pursuant to federal law. *Id.* The temperature of the second specimen was tested, and it was within the acceptable temperature range of 90-100 degrees Fahrenheit. *Id.*

The samples were sent to a lab to be tested for the presence of drugs. The first sample that had been below the acceptable temperature range tested negative for the presence of drugs. However, the second sample that had been collected two hours later under the direct observation of a testing facility employee tested positive for the presence of cocaine metabolites.

Bedford met with several Cinergy representatives on August 7, 2000, and he was asked to explain the differing test results on the two samples. The explanation Bedford gave for why the first sample was below normal temperature was because it had been sitting on the table for awhile. Bedford was given the opportunity to have the positive specimen retested by another lab, but he did not request a retest. Although Bedford did not request that the second specimen be retested, the lab that had originally tested that specimen retested it anyway, and again the sample tested positive for cocaine metabolites.

Cinergy did not accept Bedford's explanation for the below-normal temperature of the initial sample. Because the lab had not found the presence of any adulterating substance in the sample, Cinergy reasoned that Bedford must have used a substitute urine sample (i.e., either his own sample collected some other time or another person's urine sample). Therefore, the company concluded that Bedford's conduct violated company policy, so as to warrant his termination. Thus, Bedford was terminated effective August 7, 2000.

Bedford disputed his termination through his union's process for filing grievances, but was ultimately unsuccessful. He also filed a discrimination charge under federal and state laws with the

Ohio Civil Rights Commission (OCRC), but his complaint was denied because the OCRC found that the charge was unsubstantiated. Bedford requested reconsideration of the OCRC's decision, asserting for the first time that his termination had been in retaliation for his prior filing of a workers' compensation claim. The OCRC denied Bedford's request for reconsideration.

Bedford then filed the present action in the district court, alleging that Cinergy unlawfully terminated his employment for an alleged irregular urine test when similarly-situated white employees who had urine test irregularities were not terminated. Bedford brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and Ohio Rev. Code § 4112. Cinergy moved for summary judgment. In responding to the motion for summary judgment, plaintiff asserted his claim of retaliation for the first time in the district court.

While reviewing the case, the magistrate judge found that Bedford had failed to establish a prima facie case of discrimination on the basis of race, because he was unable to show that similarly-situated white employees were treated differently. Additionally, the magistrate judge recommended granting summary judgment concerning the retaliation claim.

Plaintiff objected to the report and recommendation. The district court reviewed plaintiff's objections and found that he had established a prima facie case of race discrimination. However, the court held that Cinergy had proffered a legitimate, non-discriminatory reason for terminating Bedford's employment, and that plaintiff had failed to show that the proffered reason was a pretext. Thus, the district court granted summary judgment. Bedford now appeals.

This court reviews an order granting summary judgment de novo, and hence uses the same test as the district court. *See DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). When reviewing a summary judgment decision, this court must confine its review to the evidence submitted to the district court. *See McClung v. Wal-Mart Stores, Inc.*, 270 F.3d 1007, 1011 (6th Cir. 2001). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord DiCarlo*, 358 F.3d at 414.

Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings to get to the jury. *See* Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Rather, it must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). Thus, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); it must present significant probative evidence in support of its claims to defeat the motion for summary judgment. *See Anderson*, 477 U.S. at 249-50.

A plaintiff establishes a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by providing circumstantial evidence which creates an inference of discrimination. *See Gibson v. City of Louisville*, 336 F.3d 511, 513-14 (6th Cir. 2003). However, "mere personal belief . . . and speculation are insufficient to support an inference of . . . discrimination." *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (age discrimination case).

Where there is no direct evidence of discrimination, a three-step burden-shifting analysis is applied to Title VII actions, under which: 1) the plaintiff must first set forth a prima facie case of discrimination; 2) the burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions; and 3) if the employer carries this burden, the plaintiff must then prove, by a preponderance of the evidence, that the reasons offered by the employer were a pretext for discrimination. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981). The ultimate burden of persuasion remains at all times with the plaintiff. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

To establish a prima facie case of employment discrimination due to race, a plaintiff must show that: 1) he is a member of a protected class; 2) he was subjected to an adverse employment action; 3) he was qualified for the position; and 4) he was replaced by someone outside the protected group, or treated differently than similarly-situated white employees. *See Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 461 (6th Cir. 2001).

In the present case, the parties dispute whether Bedford has shown that he was treated differently than similarly-situated white employees.

> [T]o be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and *have engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 599 (6th Cir. 2001) (emphasis added and internal quotation marks and citation omitted).

The district court properly concluded that Bedford had established a prima facie case, as one of the similarly-situated Cinergy employees to whom Bedford points was permitted to continue as a Cinergy employee despite a positive drug test. *See generally Trotter v. City of Clarksville*, 93 Fed. Appx. 756, 759 (6th Cir. May 19, 2004) (unpublished).

However, Cinergy has proffered a legitimate, non-discriminatory reason for terminating Bedford's employment. *See Burdine*, 450 U.S. at 254. Specifically, Bedford's conduct of submitting an adulterated or substituted urine sample, which is in violation of federal regulations and company policy, cannot be tolerated.

Thus, to survive the motion for summary judgment, Bedford must show that Cinergy's proffered reason for terminating him was a pretext. *See Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 589 (6th Cir. 2002). However, Bedford is unable to do so because Cinergy has provided evidence that two Caucasian employees were also terminated for submitting adulterated urine samples. Although this evidence was submitted with Cinergy's motion for summary judgment in

the district court, Bedford did not challenge the evidence. An honest belief in a proffered nondiscriminatory reason is sufficient to avoid an argument of pretext where the plaintiff does not provide further evidence. *Majewski v. Automotive Data Processing*, 274 F.3d 1106, 1107 (6th Cir. 2001).

On appeal, Bedford alleges that one of the Caucasian employees who was terminated for submitting an adulterated sample was rehired because there were questions surrounding Cinergy's drug policies, and the second Caucasian employee had committed more than one drug offense. However, because Cinergy has met its burden of production in support of its motion for summary judgment, Bedford must do more than simply show that there is some metaphysical doubt as to the material facts, *Matsushita*, 475 U.S. at 586; he must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *See Anderson*, 477 U.S. at 249-50. Therefore, because Bedford has failed to present such significant probative evidence, he has failed to show that Cinergy's reason for terminating him was a pretext. Thus, his federal race discrimination claim lacks merit.

Furthermore, the standards for Title VII claims are equally applicable to claims under Ohio Rev. Code § 4112. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020 n.2 (6th Cir. 2000). Because Bedford's federal race discrimination claim lacks merit, his state race discrimination claim fails as well. Thus, summary judgment was properly granted to Cinergy concerning these claims.

Title VII also protects an employee against retaliation for engaging in protected conduct. In the present case, the district court granted summary judgment to Cinergy for Bedford's retaliation claim, in part because Bedford failed to assert the claim in his complaint filed in the district court. The general rule is that a plaintiff's Title VII case must be limited to "the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigel v. Baptist Hosp.*, 302 F.3d 367, 380 (6th Cir. 2002). Because Bedford did not raise his retaliation claim before the EEOC or the OCRC, the claim cannot be addressed on appeal.

No. 04-4046
- 7 -

Accordingly, the district court's judgment is affirmed. Rule 34(j)(2)(C), Rules of the Sixth Circuit.

ENTERED BY ORDER OF THE COURT

*[signature]*
Clerk